REDACTED VERSION

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| WAVE DIGITAL ASSETS, LLC | ) | |
| | ) | Case No. 25-928 |
| Plaintiff, | ) | |
| | ) | Judge Tapp |
| v. | ) | |
| | ) | ▮▮▮▮▮▮▮▮▮▮ |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COMMAND SERVICES & | ) | |
| SUPPORT, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| _____ | ) | |

## DEFENDANT-INTERVENOR'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENOR'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Dated:  January 13, 2026

<div style="margin-left:40%">

Francis E. Purcell, Jr., Esq.
Thompson Hine, LLP
1919 M Street, N.W., Suite 700
Washington, D.C.  20036-1600
E-mail:  chip.purcell@thompsonhine.com
Telephone:  (202) 263-4118
*Attorney of Record for Command Services & Support, Inc.*

</div>

*Of Counsel*:

Joseph R. Berger, Esq.
Amaiya Johnson, Esq.
Thompson Hine, LLP

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT.......................................................................................................................2

    I.   Wave Erroneously Argues That the Agency Engaged in Unequal Discussions.........2

    II.  Wave Improperly Seeks to Revise the Requirements of Factor 2, Subfactor 6 of the
        Solicitation..................................................................................................................5

CONCLUSION.....................................................................................................................6

# TABLE OF AUTHORITIES

**CASES**

*Greenland Contractors v. United States,*
    131 Fed. Cl. 216 (2017) ...............................................................................................3

*L-3 Commc'ns. EO Tech, Inc. v. United States,*
    87 Fed. Cl. 656 (2009)............................................................................................. 5-6

*Red Cedar Harmonia, LLC v. United States,*
    144 Fed. Cl. 11 (2019)................................................................................................5

**RULES**

RCFC 52.1 ......................................................................................................................1

**INTRODUCTION**

Defendant-Intervenor Command Services & Support, Inc. ("CMDSS") submits this reply to Plaintiff Wave Digital Assets, LLC's ("Wave") response to the cross-motions for judgment on the Administrative Record ("AR") submitted by Defendant the United States and CMDSS, and requests judgment on the AR pursuant to Rule 52.1 of the Rules of the Court of Federal Claims. As discussed by CMDSS in its cross-motion, the AR supports the decision made by the United States Marshals Service ("USMS" or "the Agency") to select CMDSS's proposal for cryptocurrency management and disposal services, conducted under Solicitation No. 15M50024QA4400003 ("the Solicitation"), over the proposal submitted by Wave.

In its response brief, Wave addresses arguments made by CMDSS in its cross-motion, and CMDSS focuses on two of Wave's responses in this reply.[1]  First, Wave continues its erroneous assertion that the Agency engaged in unequal discussions, thereby prejudicing Wave. The AR shows that the Agency raised the issue of Wave's noncompliant swapping plan during discussions, allowing Wave an opportunity to address this noncompliance.  Wave's argument that the Agency somehow misled Wave into believing that the Agency viewed Wave's swapping plan as acceptable fails, as the record shows no such communication by the Agency and instead reflects Wave's misunderstanding.  Wave also fails to offer any support, either regulatory or legal, for its claim that the Agency did not offer it adequate time to address the Agency's question on the noncompliance of Wave's swapping plan.

Second, Wave attempts to rewrite the requirements of Factor 2, Subfactor 6 of the Solicitation, which addresses the qualifications of three key personnel identified by the offerors, to focus on one (███████████) and exclude the other two, in support of its argument that

---

[1] CMDSS reasserts and restates the arguments set forth in its cross-motion for judgment on the AR not addressed in this reply brief. ███████████████████████████████

the Agency misevaluated CMDSS's proposal under the subfactor. The AR shows that the Agency properly evaluated CMDSS's proposal in accordance with the Solicitation by considering the resumes of the three key personnel proposed by CMDSS.

CMDSS therefore respectfully requests the court to deny Wave's motion for judgment on the AR and grant the cross-motions of the United States and CMDSS for judgment on the AR.

<div align="center">**ARGUMENT**</div>

**I.    WAVE ERRONEOUSLY ARGUES THAT THE AGENCY ENGAGED IN UNEQUAL DISCUSSIONS**

Wave's arguments regarding the Agency's discussions – that the Agency misled Wave during discussions and did not provide adequate time to respond to the Agency's question regarding Wave's non-compliant swapping plan – both fail. The record shows that the Agency raised the issue of Wave's non-compliant solution for managing cryptocurrency, and did not mislead Wave as part of discussions. Further, Wave offers no regulatory or legal support for its claim that it was denied adequate time to respond to the Agency's question on the noncompliance of its proposed swapping plan. Contrary to Wave's arguments, the record shows that the Agency held meaningful discussions with all offerors, including Wave, and the court therefore should deny Wave's arguments.

Wave offers no credible evidence to support its assertion that the Agency misled Wave with respect to the compliance of its proposal with the Solicitation's requirements. Specifically, at no point did the Agency affirm that Wave's plan for the swapping of unsupported assets was acceptable. As noted by the court, both the Solicitation's Performance Work Statement ("PWS") and the questions and answers provided by the Agency clearly indicated that the contractor must be capable of receiving and managing all types of Class 2-4 cryptocurrency during the period of performance. ECF No. 32 at 6-7. Further, as noted by the Court, the Agency notified Wave of

<div align="center">2</div>

its failure to comply with this requirement during discussions and gave Wave an opportunity to propose an alternate approach.  ECF No. 32 at 7.  The Agency therefore engaged in meaningful discussions with Wave.

Wave attempts to overcome the record evidence on discussions by arguing for the first time that the Agency's question regarding available swapping mechanisms for assets not supported by popular exchanges misled Wave into believing that its non-compliant approach was acceptable to the Agency.  ECF No. 50 at 7.  Wave's assertion is, at best, disingenuous.  The Agency's question asked about Wave's plan to exchange assets not supported by "the popular exchanges," AR 1960, and relates to the requirement of PWS § 2.4.2 requiring offerors to provide a plan to exchange Class 2-4 assets not supported by most exchanges for assets supported by the offeror's exchange platform.  AR 157.  Wave argues that the Agency's question "suggests that the Agency was interested in a swapping plan, indicating to Wave that the swapping plan [proposed by Wave] was not just acceptable, but ideal."  ECF No. 50 at 7.  But Wave's swapping plan relates to assets unsupported by ██████'s Qualified Custody Cold Wallets, *not* popular exchanges.  *See* AR 1525.  Further, the Agency's question makes no reference to Wave's proposed ██████ solution.  *Id*.  The Agency's question did not mislead or misdirect Wave; rather, at best, Wave misinterpreted the Agency's question.  The court has held that such misunderstanding by an offeror does not constitute misleading discussions.  *See Greenland Contractors v. United States*, 131 Fed. Cl. 216, 228 n.9 (Fed. Cl. 2017) ("Greenland Contractors relies on the plural term 'prices' to argue that it was misled by the Air Force into believing that the agency was evaluating each of the individual CLIN prices.  Greenland Contractors' argument reaches too far.  The reference to the term 'prices' merely reflects the three pricing criteria set forth in the RFP – total evaluated price, phase-in price, and termination price – as well as the fact

3

that many different CLIN prices were encompassed within total evaluated price. Based upon this EN, it was not reasonable for Greenland Contractors to assume that the Air Force would be evaluating each CLIN separately."). Because the Agency did not mislead Wave regarding the acceptability of its proposal during discussions and Wave instead misinterpreted the Agency's question, the court should reject Wave's argument.

Wave similarly fails with respect to its argument that the Agency did not provide Wave with adequate time to respond to its question regarding Wave's non-compliant swapping plan. Wave criticizes CMDSS's discussion of the questions posed to both offerors, asserting that in contrast to the questions asked of Wave by the Agency, "[n]either question [asked of CMDSS] demands a completely new approach of CMDSS with regards to its proposal." ECF No. 50 at 9. However, as noted by the Court, "Wave intentionally submitted a proposal that deviated from the PWS's requirements," and the Agency provided Wave with an opportunity to address this deviation. ECF No. 32 at 7. Wave bears the ultimate responsibility for its decision to submit a non-conforming proposal. *See* ECF No. 32 at 8 ("Wave read the PWS, knowingly submitted a non-conforming proposal, and disregarded the clarifying Q&A responses. Wave now seeks to shift blame to USMS, pointing a finger outwards while ignoring the three directed back at itself."). Further, Wave offers no regulatory or legal support for its claim that it was denied adequate time to respond to the Agency's question. Ultimately, Wave must bear the responsibility of its choice to propose a solution that failed to conform to the Solicitation's requirements and cannot shift the blame for its decisions to the Agency. The Court therefore should reject Wave's arguments regarding discussions.

## II.   WAVE IMPROPERLY SEEKS TO REVISE THE REQUIREMENTS OF FACTOR 2, SUBFACTOR 6 OF THE SOLICITATION

Wave continues to advance the erroneous argument that the Agency failed to evaluate CMDSS's proposal properly under Factor 2, Subfactor 6, and as a result did not downgrade CMDSS's proposal to "Low Confidence."  ECF No. 50 at 18-20.  But Wave's argument suffers from its fixation on the ▮▮▮▮▮▮▮▮▮ requirement of Subfactor 6 and effective exclusion of the other elements of the subfactor.  Factor 2, Subfactor 6 of the Solicitation, "Resumes," stated that "[p]roposals shall include resumes for Key Personnel as per PWS Section 5.6.3."  AR 139.  The Key Personnel section of the PWS identified three key personnel – Project Manager, Security Officer and Compliance Officer – and provided qualifications for each.  AR 166-67.  The Solicitation's evaluation criteria for Factor 2, Subfactor 6 emphasized that the Agency would evaluate offeror proposals for each of the key personnel positions, not just the ▮▮▮▮▮ ▮▮▮▮: "Offeror's resumes will be evaluated to assess that the proposed personnel can successfully perform and achieve all requirements in the PWS.  Resources will be evaluated on the basis of candidates' education, years or work experience related to the technical requirements and certifications."  AR 144.  Wave's myopic focus on the ▮▮▮▮▮▮▮▮ position would reduce the scope of the Agency's evaluation under Factor 2, Subfactor 6 to one position, rather than all three key personnel positions.  As discussed in CMDSS's motion for judgment on the administrative record, the Agency properly evaluated the resumes submitted by CMDSS for all three proposals and assigned a "Some Confidence" rating to CMDSS under the subfactor.  ECF No. 47 at 8-11.  The court has noted the deference provided to an agency with respect to its evaluation of technical proposals.  *See Red Cedar Harmonia, LLC v. United States*, 144 Fed. Cl. 11, 22 (2019) ("Technical ratings by the Agency 'involve discretionary determinations of procurement officials that a court will not second guess.'" (quoting *L-3 Commc'ns. EO Tech,*

*Inc. v. United States*, 87 Fed. Cl. 656, 664 (2009)).  Wave offers no support for its argument that would justify invalidating the Agency's evaluation rating, and the Court should reject its argument.

## CONCLUSION

Defendant-Intervenor Command Services & Support, Inc. respectfully requests the court to deny Wave's motion for judgment on the administrative record and grant Defendant the United States' and Defendant-Intervenor CMDSS's cross-motions for judgment on the administrative record.

Respectfully submitted,


 s/Francis E. Purcell, Jr.

Francis E. Purcell, Jr, Esq.
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C.  20036-1600
(202) 263-4118 (office)
(202) 331-8330 (facsimile)

Attorney of Record for Command Services &
Support, Inc.


Of Counsel:
Joseph R. Berger, Esq.
Amaiya Johnson, Esq.
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C.  20036-1600
(202) 331-8800 (office)
(202) 331-8330 (facsimile)


Dated:  January 13, 2026

6

**CERTIFICATE OF SERVICE**

I DO HEREBY CERTIFY that on this 13th day of January, 2026, I caused a true copy of the foregoing Command Services & Support, Inc.'s Reply to Plaintiff's Response to Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record to be served, via the Court's electronic filing system, on the parties of record in this matter.

s/Francis E. Purcell, Jr.