**UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

Redacted Version

| | |
|---|---|
| **Wave Digital Assets, LLC** | |
| Plaintiff, | No. 25-cv-00928 |
| **v.** | ████████████ |
| | ███████████████ |
| | ████████████ |
| **The United States of America**, | Judge David A. Tapp |
| Defendant. | |
| and | |
| **Command Services & Support, Inc.,** | |
| Defendant-Intervenor. | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**

Wave Digital Assets, LLC's respectfully requests that the Court reconsider its judgment entered on May 14, 2026, pursuant to the Opinion and Order issued on May 13, 2026. The Court should reconsider its judgment on the basis that such is necessary to avoid a manifest injustice. Wave further respectfully requests that the Court order the U.S. Department of Justice, United States Marshals Service ("USMS") to terminate Contract No. 15M50025DA4400001 (the "Contract") awarded to Command Services & Support, Inc. ("CMDSS") for the performance of work contemplated under RFP No. 15M50024QA4400003 (the "Solicitation"), and proceed with what recourse the Court is permitted to order, including award of contract under the Solicitation to Wave if such is permitted, or any other relief this Court sees fit for this matter.

████████████████████████████████████████████████

███████████████████████

**Introduction**

Wave does not lightly request this reconsideration, however, the situation is such that it must be done. As Wave collected the evidence and considered the Agency's response (not filed until April 30), it determined, after careful review, that information only made recently available to Wave indicated that John "Lick" Daghita served in the role of project manager for CMDSS, a bait-and-switch upon which the Agency was misled by CMDSS' representations in its proposal. The decision presently represents an (understandable to be sure) error in apprehension of the full context of evidence that must be corrected for the sake of justice.[1]

**Statement of the Case**

For the sake of brevity, Wave incorporates the Statement of the Case included with its memorandum in support of its motion for judgment on the administrative record, CM/ECF docket no. 42, as if fully set forth herein.

In late January 2026, an investigation into CMDSS alleged that John Daghita, ████████ ████████████████████████████████, had engaged in the embezzlement and abscondment of approximately $40 million in cryptocurrencies that had been seized by USMS. In support of a criminal complaint against John Daghita, an affidavit ("Affidavit") made by Federal Bureau of Investigation ("FBI") Special Agent Jordan A. Jenkins ("Jenkins") was submitted to the United States District Court for the Eastern District of Virginia on January 30, 2026. See Plf.'s Aff., United States v. Daghita, No. 1:26-cr-00063, ECF No. 2 (E.D. Va. Jan. 30, 2026). This Affidavit and all filings related to the same were sealed until the arrest of John Daghita. See Plf. Mot. to Seal, United States v. Daghita, No. 1:26-cr-00063, ECF No. 5 (E.D. Va. Jan. 30, 2026). The

---

[1] Lick was no "Smooth Criminal," based on the allegations from the Department of Justice. See Michael Jackson, Smooth Criminal, Epic Records (1987).

██████████████████████████████████████████████████
████████████████████████

Affidavit does not expressly name CMDSS as the company that employed John Daghita, the facts listed regarding the company discussed in the Affidavit matches CMDSS and John Daghita was ███████████████████████████████████████████ See generally Plf.'s Aff., United States v. Daghita, supra at ECF No. 2. The Affidavit observes that, after award was made to CMDSS in October 2024, CMDSS hired John Daghita as a "Cryptocurrency Subject Matter Expert" ("SME") to work on the Contract in January 2025. Id. at 6. The Affidavit further notes that John Daghita was made "the project lead for handling the virtual currency assets received from USMS." Id. at 7.

CMDSS, upon receiving virtual currency assets from USMS, would store the same in addresses operated and secured by CMDSS. Id. When USMS would request that CMDSS liquidate virtual currency assets, CMDSS would transfer the assets through decentralized exchanges to a CMDSS-owned exchange account for conversion into U.S. dollars. Id. CMDSS would then withdraw these dollars from the exchange account to a CMDSS bank account. Finally, CMDSS would send USMS a bank wire for the U.S. dollar balance to complete the liquidation. Id.

The Affidavit observes that John Daghita was responsible for this entire process, in line with the role of a project manager. Id. On December 15, 2025, CMDSS engaged in three unauthorized transfers of virtual currency worth millions of dollars from CMDSS-owned wallets. Id. at 8. The Affidavit notes that John Daghita, and not ████████████, was the individual that communicated a plan to transfer virtual currencies to new wallet addresses to USMS for alleged security reasons, an action that corresponds to the role of the Project Manager in the PWS. Id.

The Affidavit then observes that from December 15, 2025, to January 23, 2026, 29 separate unauthorized transfers were made from CMDSS-owned addresses resulting in the loss of $46 million to the U.S. Government. Id. at 9. The FBI arrested John Daghita in Saint Martin on or

███████████████████████████████████████████████████

██████████████████████

about March 4, 2026, for these alleged embezzlement, money laundering, and unlawful monetary transactions. See Indictment, United States v. Daghita, No. 1:26-cr-00063, ECF No. 8 (E.D. Va. Mar. 26, 2026). John Daghita was then indicted in the United States District Court for the Eastern District of Virginia on March 26, 2026, for the aforementioned alleged crimes. Id.

John Daghita, it appears, ██████████████████████████████████

██████████████████████████████ and in the transcript of the same in the Administrative Record. AR 661.[2]  Information indicates that John Daghita was either 19 or 20 at the time that ████

████████ was made. See Crim. Cover Sheet, United States v. Daghita, No. 1:26-cr-00063, ECF No. 11 (E.D. Va. Mar. 26, 2026). This means that after receiving award, CMDSS placed John Daghita in the role of project manager, a key personnel role under the PWS, despite a lack of qualification for the same. CMDSS' proposal ███████████████████████████

██████████████████ CMDSS' proposal ██████████████████████

███████████████████████████████████████████████████

further evidence that John Daghita was placed in the role of de facto "Project Manager" for the Contract after award.

In addition, in March 2026, Wave learned from ██████████ who had heard about the arrest of John Daghita and wanted to make clear its lack of involvement in the matter, that CMDSS never utilized the services of ██████████ to carry out the Contract despite entering into a teaming agreement with ██████████. See Communication from ██████████ to Wave, Motion Exhibit 1; Declaration of Les Borsai, Motion Exhibit 2. CMDSS' proposal stated that it had ██████████

██████████████████ for this procurement. AR 1351.

---

[2] There was a misspelling of John Daghita's name in the presentation transcript that prevented discerning that it was referring to John Daghita.

**Standard of Review**

Motions for reconsideration are governed by Rule 59(a) of the Rules of the Court of Federal Claims, allowing reconsideration "on all or some of the issues--and to any party--as follows:…upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." The Federal Circuit has observed: "[A] court, in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (citation omitted). "Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Podlucky v. United States, No. 21-1377C, 2021 WL 3124073, at *1 (Fed. Cl. July 23, 2021) (citation omitted).

**Argument**

**A.    CMDSS Engaged in a "Bait-and-Switch" that Defrauded the Government.**

As observed by the rules of this very Court, this Court may grant a motion for reconsideration where there is a showing of satisfactory evidence that a fraud has been done to the United States. In the matter at hand, there is more than good reason to believe that such a fraud has occurred. In the context of federal contract, a "bait-and-switch" generally refers to an offeror's misrepresentation in its proposal of the personnel that it expects to use during contract performance. See Conley & Assocs., Inc. v. United States, 142 Fed. Cl. 177, 182 (2019) ("The Government and Valkyrie effectively allege that Conley engaged in a "bait and switch," a maneuver in which an awardee proposes certain key personnel, then substitutes them for other individuals post-award."). Such an issue has four elements:

> (1) The awardee represented in its proposal that it would rely on certain specified personnel in performing the services; (2) the agency relied on this representation in

███████████████████████████████████████████████

████████████████████

evaluating the proposal; (3) it was foreseeable that the individuals named in the proposal would not be available to perform the contract work; and (4) personnel other than those proposed are performing services.

Id. (quoting Fulcra Worldwide, LLC v. United States, 97 Fed.Cl. 523, 540 (2011)). "Termination of a contract award based on the proposal is appropriate where such a misrepresentation materially influences an agency's evaluation of an offeror's proposal." Unified Architecture & Eng'g, Inc. v. United States, 46 Fed. Cl. 56, 64-65, aff'd, 251 F.3d 170 (Fed. Cir. 2000).

On January 26, 2026, an independent investigator posted allegations on the social media website "X" that a certain John Daghita, son of ███████████, the ██████████████████ ██████, had engaged in a set of thefts of cryptocurrencies from federal government custody. At the time, it was not immediately certain whether the claim was that John Daghita had done this through a role he held with CMDSS, whether he had simply used to access to CMDSS' property to accomplish this alleged theft, or whether he had done this completely separately from CMDSS. It was also not immediately clear whether the allegations even had any merit.

As such, Wave monitored the matter and provided notice of the same to the Court, as evidenced by its filings of ECF docket nos. 56, 60, and 61. Wave felt it could not act much further until any concrete actions were taken by the federal government regarding John Daghita and it had a chance to review the same. It did become apparent, eventually, that the allegations, while still pending in court, had merit on their face. On March 4, 2026, the FBI arrested John Daghita for the very thefts alleged in January. It also came to Wave's attention that a case was proceeding against John Daghita in the Eastern District of Virginia, 1:26-CR-00063. However, information is continuing to be received as of this time. A crucial error in the transcription for CMDSS' oral presentation had resulted in a manifestly unjust situation that must be resolved.

████████████████████████████████████████████████████
████████████████████

CMDSS' proposal indicates that ██████████████████████████
██████ ████████████ See AR 603-04. Had CMDSS' proposal stated that John Daghita was to be the Project Manager, it would have failed to meet the PWS requirements for that role, as John Daghita lacks four years of technical management experience at a technology company and experience leading large-scale programs and initiatives. See AR 166; Crim. Cover Sheet, Daghita, supra (Observing that John Daghita would have been 19-20 years old at the time of the oral presentation and thus it is not possible that he could have such experience). Thus, USMS necessarily relied on CMDSS' representation.

CMDSS clearly planned to have John Daghita serve in the role of Project Manager for the Contract, as it almost immediately moved to place him in that role upon receipt of the Contract and there is no indication of any sudden unavailability on the ████████████████. CMDSS' own apparent statements to the FBI regarding John Daghita's involvement conflict with the record, which shows that he was involved in CMDSS' efforts regarding this procurement from the outset. John Daghita served as the Project Manager, as the Affidavit observes that he was "the project lead for handling the virtual currency assets received from USMS" and further acted as a point of contact with USMS, which is reserved for the role of Project Manager under the PMS.

It was foreseeable that John Daghita would be utilized as the Project Manager as well, in light of his involvement in the presentation. Indeed, it is this item that initially obscured the matter. For Wave's part, it was not possible to discern that John Daghita was even involved with the procurement until the past couple weeks. A review of the transcript of CMDSS' oral presentation includes no mention of a "John Daghita." There is, however, a mention of a "John Dagata." See

---

[3] CMDSS' proposal refers to the role as "Program Manager" but the distinction is purely semantical.

AR 661. This error prevented determination that the transcript was referring to John Daghita. Indeed, this was the case even for the Court, as it observed in its decision that "[t]he name 'John Dean Daghita' does not appear in the AR." ECF No. 65 at 6.

In any case, even if this Court should feel that the matter is one that could have been brought earlier, the fact remains that it expressly has discretion to reconsider matters where a "fraud, wrong, or injustice has been done to the United States." RCFC 59(a). Furthermore, "'[M]anifest injustice' has been categorized as 'injustice that is apparent almost to the point of being indisputable.'" Robinson v. United States, No. 10-397 C, 2012 WL 676442, at *1 (Fed. Cl. Feb. 28, 2012). There is substantial evidence here that a fraud has been perpetrated against the United States. The son of CMDSS' owner was placed in the position of Project Manager, contrary to what was stated in CMDSS' proposal. This same son proceeded to allegedly steal $40 million in cryptocurrency from the federal government. This is a matter for which it is shocking that the Agency itself has refused to take further action. With this filing, it is hopefully now at least understood by the Agency that it, too, is suffering here if the improprieties at hand are not corrected. If there were ever a situation where reconsideration was necessary to prevent a manifest injustice, this is the time. Thus, the Court (and indeed the Agency) should reconsider this matter.

**B.    CMDSS' Planned Utilization of John Daghita Violated the PWS.**

"In reviewing an agency's procurement decisions, the Court does not substitute its judgment for that of the agency." Sys. Dynamics Int'l, Inc. v. United States, 167 Fed. Cl. 780, 790 (2023) (citation omitted). However, "an 'award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Id. at 789 (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

███████████████████████████████████████████

███████████████████████

Even if somehow John Daghita were not the Project Manager, the PWS provides that qualified personnel for those transacting cryptocurrency assets must have an undergraduate degree with at least three years of experience in the cryptocurrency industry or seven years of experience in that industry. AR 165. The PWS further provides that even for non-transactional duties, qualified personnel must hold an undergraduate degree. AR 166.

John Daghita nonetheless ███████████████████████ indicating that he was to be utilized as personnel for the Contract. AR 661. At the time of his arrest in 2026, he was apparently 21 years old. See Crim. Cover Sheet, United States v. Daghita, No. 1:26-cr-00063, ECF No. 11 (E.D. Va. Mar. 26, 2026). This means that, at the time ███████████████, he would have been 19 or 20 years old. It hardly needs said that a 19- or 20-year-old cannot possibly have an undergraduate degree and three years of work experience, let alone seven years of work experience. It is also extremely dubious that John Daghita held an undergraduate degree at the time of award. Therefore, CMDSS' team included an individual who could not possibly meet the very qualifications required in the PWS for this procurement. Such should have resulted in the disqualification of CMDSS. However, as it was, CMDSS was not disqualified. This is improper, and the Court should reconsider this accordingly.

C.    **CMDSS' Arrangement with ███████████ was a Misrepresentation to the Government.**

As noted earlier, a "bait-and-switch" generally refers to an offeror's misrepresentation in its proposal of the personnel that it expects to use during contract performance. See Conley, supra at 182. This principle can be reasonably extended to subcontractors as said subcontractors are themselves personnel. CMDSS represented in its proposal that it would utilize the services of ███████ ███████ as a subcontractor. See AR 1351. However, it has recently been learned that ████████

itself has stated that it was never utilized by CMDSS for the Contract. <u>See</u> Mot. Exs. 1 and 2. ▮

▮ observed: ▮

▮ <u>Id</u>. This

contradicts CMDSS' own statements in its proposal. CMDSS therefore made a misrepresentation

regarding its planned subcontractor usage for the Contract. The Agency relied on such

misrepresentation in its decision to award the Contract to CMDSS. <u>See</u> AR 2079. This, too,

represents a "bait-and-switch" to the Agency. <u>See</u> <u>Conley</u>, <u>supra</u>. CMDSS clearly made a

representation that it would utilize the services of ▮ in its proposal. Despite this,

CMDSS never actually did such. Thus, another reason that CMDSS should be disqualified.

**Conclusion and Relief Requested**

For the reasons stated herein, Wave's Motion for Reconsideration should be granted. Wave

respectfully requests that the Court revisit its order regarding this matter.

Dated: May 26, 2026

Respectfully Submitted,

*Of counsel:*

/s/ Shane J. McCall
Shane J. McCall
KOPRINCE MCCALL POTTROFF LLC
901 Kentucky Street, Suite 301
Lawrence, KS 66044
(785) 200-8919
*smccall@koprince.com*

Nicole D. Pottroff
John L. Holtz
Gregory P. Weber

KOPRINCE MCCALL POTTROFF LLC    *Counsel for Wave Digital Assets LLC*


**Certificate of Service**

I certify that a true and correct copy of this Notice was provided to the Clerk of Court via the CM/ECF system, for service on the United States and all other parties on May 26, 2026, and was sent via email to lead counsel for the United States (elinor.j.kim@usdoj.gov) and Command Services & Support, Inc. (chip.purcell@thompsonhine.com).

 *s/ Shane J. McCall*
*Counsel for Wave Digital Assets, LLC*

11

# EXHIBIT 1
# REDACTED
# IN ITS
# ENTIRETY

# EXHIBIT 2

## Declaration of Laszlo Borsai

I, Laszlo Borsai, declare the following statements to be true and correct under penalty of perjury:

1.      I am over the age of 18 and am competent to make this Declaration of the following facts, of which I have personal knowledge. If called to do so, I could and would testify as to each of the statements set forth below.

2.      I am and have at all times relevant to this matter been a co-founder, owner, officer, and employee of Wave Digital Assets LLC.

3.      On March 11, 2026, I received a message on the messaging application "WhatsApp" from ▮▮▮▮▮▮▮▮▮ who is ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮

4.      In this message, ▮▮▮ stated:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

5.      At no time prior to my receipt of this communication did I, anyone else with Wave, or an agent of Wave reach out to ▮▮▮ or anyone else with ▮▮▮▮▮ or an agent of ▮▮▮▮ to inquire about their involvement with RFP No. 15M50024QA4400003 or the contract issued thereunder.

Executed May 26, 2026.

Signed by:

*les Borsai*

Laszlo Borsai
Co-Founder
Wave Digital Assets LLC

1