# In the United States Court of Federal Claims

No. 25-928
Filed: August 26, 2026
Reissued: September 10, 2026[†]
**SEALED**

**WAVE DIGITAL ASSETS, LLC,**

***Plaintiff*,**

**v.**

**THE UNITED STATES,**

***Defendant*.**

**and**

**COMMAND SERVICES & SUPPORT, INC.,**

***Intervenor-Defendant*.**

*Shane J. McCall*, with *Nicole D. Pottroff*, *John L. Holtz* and *Gregory P. Weber*, Koprince McCall Pottroff LLC, Lawrence, KS, for Plaintiff.

*Elinor J. Kim*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *William J. Grimaldi*, Assistant Director, *Patricia M. McCarthy*, Director, *Brett A. Shumate*, Assistant Attorney General, with *C. Joseph Carroll*, Senior Associate General Counsel, U.S. Marshals Service, Washington, D.C., for Defendant.

*Francis E. Purcell, Jr.*, with *Joseph R. Berger* and *Amaiya Johnson*, Thompson Hine LLP, Washington, D.C., for Intervenor-Defendant.

## MEMORANDUM OPINION AND ORDER

[†] This Order was originally issued under seal, (ECF No. 75), and the parties were directed to file a notice of redactions consistent with the Court's instructions. That Notice was filed on September 9, 2026. (ECF No. 76). The Court accepts all jointly proposed redactions. The sealed and public versions of this Opinion/Order differ only to the extent of those redactions, the publication date, and this footnote.

**TAPP, Judge.**

"Pay no attention to that man behind the curtain!" *The Wizard of Oz*, Blu-ray (Metro-Goldwyn-Mayer 1939). In this dismissed bid protest, Plaintiff Wave Digital Assets, LLC ("Wave") contends that the awardee, Command Services & Support, Inc. ("CMDSS"), secured the contract by adhering to the hidden-wizard principle—presenting one figure to the agency while another allegedly pulled the operational levers out of sight. (Pl.'s Mot., ECF No. 67). Wave now asks the Court to revisit its prior dismissal on the theory that CMDSS's supposed sleight of hand warrants revisiting the case. (*Id.*). Because Wave has not established any of the limited grounds for reconsideration under RCFC 59, its Motion is **DENIED**.

The Court previously denied Wave's challenge to the United States Marshals Service's ("USMS") award of a cryptocurrency contract to CMDSS. (*See* Opinion at 2, ECF No. 65); *Wave Digital Assets, LLC v. United States*, 181 Fed. Cl. 605 (2026). The Court found that the separate, post-award criminal allegations lodged against CMDSS's employee John Daghita involved matters of contract administration that were outside the Court's bid-protest jurisdiction. (*Id.* at 6–7 n.8 (citing 28 U.S.C. § 1491(b)(1); *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995))). As its primary grounds for reconsideration, Wave asks this Court to look behind the curtain, arguing that the person CMDSS identified as its Project Manager—[redacted]—was not actually the person running the contract to store and liquidate cryptocurrency seized by the USMS. (Pl.'s Mot. at 1). In further support, Wave also asks the Court to consider a proposed teaming agreement that never materialized, an arrangement Wave now characterizes as evidence that CMDSS misled the USMS during the award process. (*Id*. at 4). In Wave's view, the failure of that prospective partnership shows that CMDSS duped the agency into selecting its proposal. (*Id.*). The Court declines relief on either ground, despite the now-obvious flawed award decision which ultimately led to the alleged theft of millions in seized cryptocurrency from the USMS.

"The burden on the moving party is high and a motion for reconsideration [pursuant to RCFC 59] is not intended merely to give an unhappy litigant an additional opportunity to persuade the court to accept its arguments." *Multiservice Joint Venture, LLC v. United States*, 374 F. App'x 963, 967 (Fed. Cir. 2010). The decision to grant a motion for reconsideration rests within the trial court's discretion and requires a showing of extraordinary circumstances sufficient to justify such relief. *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990); *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (citations omitted). Generally, reconsideration is permitted for one of three reasons: (1) an intervening change in controlling law; (2) the emergence of previously unavailable evidence; or (3) the need to prevent manifest injustice. *Seventh Dimension, LLC v. United States*, 161 Fed. Cl. 110, 115 (quoting *Parsons ex rel. Linmar Prop. Mgmt. Tr. v. United States*, 174 F. App'x 561, 563 (Fed. Cir. 2006)). When a request for reconsideration is premised on manifest injustice, the movant must show an injustice so clear and compelling that it is virtually indisputable. *Englewood Terrace L.P. v. United States*, 86 Fed. Cl. 720, 725 (2009); *accord Robinson v. United States*, No. 10-397C, 2012 WL 676442, at *1 (Fed. Cl. Feb. 28, 2012) (describing manifest injustice as "injustice that is apparent almost to the point of being indisputable"). Wave identifies no intervening change in controlling law. It must therefore show either that previously unavailable evidence has now emerged or that reconsideration is necessary to prevent manifest injustice. *Parsons*, 174 F. App'x at 563. Wave establishes neither.

Wave offers three bait-and-switch-styled theories in support of reconsideration.[1] (Pl.'s Mot. at 5–10). The first two arguments are related; Wave contends that CMDSS misrepresented its intended key personnel and planned to rely on individuals who did not meet the Performance Work Statement's qualification requirements. (*Id.* at 5–8 ("CMDSS Engaged in a 'Bait-and-Switch' that Defrauded the Government"), 8–9 ("CMDSS' Planned Utilization of John Daghita Violated the [Performance Work Statement]")). Wave asserts that CMDSS proposed [redacted] as Project Manager but installed [redacted], John Daghita, immediately after award, even though John lacked the required degree and experience and [redacted]. (*Id.* at 5). Wave further contends that the Record shows John acted as project lead and served as the USMS point of contact despite not meeting the Performance Work Statement's qualifications and later being arrested for allegedly stealing federal cryptocurrency assets. (*Id.* at 6–8).

To support this theory, Wave relies on a previously sealed affidavit from a criminal case in the Eastern District of Virginia that was not part of the Administrative Record when the Court issued its prior Opinion.[2] (*Id.* at 2). That affidavit describes John Daghita as "the project lead for handling the virtual currency assets received from USMS" and as the person who handled USMS wallet-security communications. (*Id.* at 3). According to Wave, CMDSS hired John Daghita as a "Cryptocurrency Subject Matter Expert" in January 2025, three months after the October 2024 award, and he was thereafter responsible for the very process the Project Manager was assigned to oversee: receiving USMS's cryptocurrency, storing it, and directing its liquidation. (*Id.*). Therein lies the rub. Even by Wave's reckoning, John Daghita's involvement began during performance rather than prior to performance. That distinction is dispositive.

Whether or not it is included in the Administrative Record, evidence concerning post-award personnel assignments does not constitute "new" evidence for purposes of RCFC 59(a) and does not bear on the legality of the award decision. *See Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330 (Fed. Cir. 2011) (finding that an "offeror's potential failure to comply with the proposal requirements is ordinarily 'a matter of contract administration,' which does not go to the propriety of accepting the bid." (quoting *Centech Grp., Inc. v. United*

---

[1] A bait-and-switch in the procurement context refers to an offeror's misrepresentation that it will furnish particular personnel or resources during performance—inducing the agency to rely on those promised qualifications—only for the offeror to substitute different, often unqualified, personnel once performance begins. *See Conley & Assocs., Inc. v. United States*, 142 Fed. Cl. 177, 182 (2019) (stating that a bait-and-switch claim requires a showing that: (1) the awardee represented in its proposal that it would rely on specified personnel; (2) the agency relied on that representation; (3) it was foreseeable that the proposed personnel would not perform the work; and (4) different personnel are in fact performing the work.) (quoting *Fulcra Worldwide, LLC v. United States*, 97 Fed. Cl. 523, 540 (2011)).

[2] Wave alleges that the affidavit from Federal Bureau of Investigation ("FBI") Special Agent Jordan A. Jenkins ("Agent Jenkins") was filed on January 30, 2026, but remained sealed on the Eastern District of Virginia's docket until John Daghita's arrest on March 4, 2026. (Pl.'s Mot. at 2 (citing Aff. of Agent Jenkins ("Jenkins Affidavit"), *Daghita*, ECF No. 2 (E.D. Va. Jan. 30, 2026))).

*States*, 554 F.3d 1029, 1039 (Fed. Cir. 2009))). Accordingly, such information cannot support reconsideration of the Court's prior bid-protest dismissal under RCFC 59(a), and the Court declines to revisit its decision on this ground.

As its final argument, Wave contends that it learned in March 2026 that [redacted], a subcontractor CMDSS's proposal identified as a prospective partner for the procurement, was never actually engaged to work on the Contract. (Pl.'s Mot. at 9–10 (citing AR 1351; Pl.'s Exs. 1, 2)).[3] Specifically, Wave contends that, although CMDSS's proposal represented that it had partnered with [redacted], that prospective partner performed no work under the Contract.[4] (*Id.* at 9 (citing AR 1351)). In support, Wave relies on a post-decision WhatsApp message from [redacted]'s chief executive officer to Wave co-founder Laszlo Borsai stating that [redacted] "never worked with" CMDSS, although the companies had "discussions about potentially helping out with any complex issues." (Pl.'s Ex. 1). Wave does not dispute the USMS's evaluation when it scored CMDSS's proposal, but instead challenges CMDSS's later, post-award decision not to engage [redacted] during performance. That contention falls outside the scope of a bid protest, which is limited to assessing the reasonableness of the agency's award decision based on the record before it at the time. An offeror's post-award failure to employ proposed personnel or subcontractors is ordinarily "a matter of contract administration." *See Allied Technology Group, Inc.*, 649 F.3d at 1330 (offeror's post-award failure to comply with proposed personnel ordinarily "a matter of contract administration"); *see also Gov't Tech. Servs. LLC v. United States*, 90 Fed. Cl. 522, 527 (2009) (Contract Disputes Act provides the "exclusive mechanism" for resolving contract management disputes). For that reason, it affords no basis for reopening the Court's prior decision.

Wave's Motion identifies no cognizable basis for reconsideration under RCFC 59(a). It offers no previously unavailable evidence despite the exercise of due diligence and fails to demonstrate any manifest injustice—let alone one "apparent to the point of being indisputable." *See Englewood Terrace*, 86 Fed. Cl. at 725. Instead, Wave simply asks the Court to revisit the merits of its prior ruling on essentially the same record and to reweigh arguments the Court has already considered and rejected. That is not a permissible use of RCFC 59(a). *Fru-Con Const. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999), *aff'd sub nom.* 250 F.3d 762 (Fed. Cir. 2000); *Wolfchild v. United States*, 101 Fed. Cl. 92, 95 (2011).

---

[3] Wave refers to "Exhibit 1" and "Exhibit 2" in its Motion, but no separate attachments accompany the filing. What Wave labels as Exhibit 1 is page 13 of its Motion, and Exhibit 2 is page 15.

[4] Wave points to USMS's evaluation of CMDSS's teaming agreement as further evidence of a misrepresentation. (Pl.'s Mot. at 10 (citing AR 2079)). The teaming agreement, however, stated only that the parties "will engage in good faith negotiations towards entering into a subcontract"—a contemplated relationship, not a guaranteed one. (AR 1405; *see* Def.'s Resp. at 6, ECF No. 71). That language does not show that CMDSS's representation was false when made or that it was material to the award decision.

For these reasons, Wave's Motion for Reconsideration, (ECF No. 67), is **DENIED**. The parties shall meet and confer and file a Joint Status Report proposing redactions to this Memorandum Opinion within fourteen (14) days of its entry to allow the Court to file a public version of the Opinion.

**IT IS SO ORDERED.**

s/ David A. Tapp
DAVID A. TAPP, Judge